[Cite as *In re Ja.S.*, 2023-Ohio-722.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of: | : | |
| | | No. 22AP-2 |
| [Ja.S., | : | (C.P.C. No. 21JU-3632) |
| J.S., Mother, | : | (REGULAR CALENDAR) |
| Appellant]. | : | |
| In the matter of: | : | |
| | | No. 22AP-3 |
| [J.K. et al., | : | (C.P.C. No. 21JU-3626) |
| J.S., Mother, | : | (REGULAR CALENDAR) |
| Appellant]. | : | |
| In the matter of: | : | |
| | | No. 22AP-4 |
| [J.J., | : | (C.P.C. No. 21JU-3630) |
| J.S., Mother, | : | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on March 9, 2023

**On brief:** *Yeura Venters*, Public Defender, and *George M. Schumann*, for appellant.

**On brief:** *Tyler Dunham*, for Franklin County Children Services.

APPEALS from the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch

LUPER SCHUSTER, J.

{¶ 1}   Appellant, J.S. ("mother"), mother of J.K., M.K, J.J., and Ja.S. (collectively "the children"), appeals from a decision and entry of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, terminating her parental rights and placing J.K., M.K., and J.J. in the permanent custody of appellee, Franklin County Children Services ("FCCS").  Mother additionally appeals from the decision and entry granting temporary court commitment ("TCC") of Ja.S. to FCCS.  For the following reasons, we reverse.

## I. Facts and Procedural History

{¶ 2}   This case involves FCCS's request for permanent custody of J.K., born September, 2013, M.K., born March, 2015, J.J., born February, 2019, and FCCS's request of temporary court commitment of Ja.S., born May, 2020. FCCS initiated three separate cases in the juvenile court for the four children.

{¶ 3}   Initially, FCCS filed a complaint concerning J.K. on April 17, 2019 requesting TCC.  The complaint alleged J.K. was a neglected and dependent child.  The juvenile court issued a temporary order of custody ("TOC") to FCCS the next day.  The juvenile court notified mother of her right to counsel and appointed counsel to represent mother.

{¶ 4}   Due to failure to adjudicate and dispose of the complaints within 90 days as mandated by R.C. 2151.35(B)(1), FCCS dismissed and refiled the complaint two times.

{¶ 5}   In its refiled October 7, 2019 complaint, FCCS added M.K. as an alleged neglected and/or dependent child.  The juvenile court issued a TOC of both J.K. and M.K. to FCCS on October 8, 2019.  Again, due to failure to adjudicate and dispose of the complaint within 90 days, FCCS dismissed and refiled the complaint related to J.K. and M.K. four times between December 30, 2019 and January 20, 2021.

{¶ 6}   Also on October 7, 2019, FCCS filed a complaint alleging J.J. to be an abused, neglected, and/or dependent child and requested TCC.   The juvenile court issued a TOC of J.J. on October 8, 2019.  The complaint related to J.J. was dismissed and refiled four times between December 30, 2019 and January 20, 2021 due to failure to adjudicate and dispose of the complaints within 90 days.

{¶ 7} On May 18, 2020, FCCS filed a complaint alleging Ja.S. to be a dependent child and requesting TCC. The juvenile court issued a TOC of J.S. to FCCS on May 21, 2020. The complaint related to Ja.S. was then dismissed and refiled three times between August 13, 2020 and January 20, 2021 due to failure to adjudicate and dispose of the complaints within 90 days.

{¶ 8} The same appointed counsel was appointed to represent mother on each of the previously filed and dismissed complaints.

{¶ 9} On April 12, 2021, FCCS dismissed and refiled the complaints in all three cases once again. While the complaints in all three cases maintained the allegations from the prior complaints, the complaint related to J.K. and M.K., as well as the complaint related to J.J., now requested permanent court commitment ("PCC"), also known as permanent custody, as the disposition. The complaint related to Ja.S. once again requested TCC as the disposition.

{¶ 10} Appointed counsel appeared at the April 13, 2021 preliminary hearing on the refiled complaints. Mother did not appear at the hearing. When the magistrate inquired whether mother was going to appear, counsel responded that he did not know. The magistrate asked counsel whether he "had some [ ] challenges making contact with" mother, and counsel responded "[t]o say the least." (Apr. 13, 2021 Tr. at 5.) FCCS informed the magistrate that FCCS was requesting PCC of J.K., M.K, and J.J., but not of Ja.S. due to the length of the time the children had been in custody. When the magistrate then asked appointed counsel if he accepted service of the refiled complaints on mother's behalf, counsel responded "I don't have the authority to do that with the change" in the requested disposition. (Tr. at 6.) The magistrate then said "I will not be able to reappoint you on [ ] the new cases," and counsel then asked to be excused from the preliminary hearing since he was not reappointed to represent mother. *Id.*

{¶ 11} On June 3, 2021, the magistrate conducted a final hearing on Ja.S.'s complaint. After the magistrate expressed some confusion as to why counsel for mother was not present for the hearing, the guardian ad litem reminded the magistrate that the court did not reappoint counsel for mother when the complaints were refiled on April 13, 2021. Prior counsel for mother was nonetheless called into the hearing, and the magistrate subsequently excused counsel on the grounds that counsel previously "withdrew" from

representing mother on the complaints. The magistrate then conducted the hearing without mother present and found Ja.S. to be a dependent child, ordering TCC to FCCS.

{¶ 12} Following two continuances, the magistrate then conducted the final hearing on the complaints related to FCCS's request for permanent custody of J.K., M.K., and J.J. on June 25, 2021. Mother did not appear. At the conclusion of the hearing, the magistrate adjudicated the complaints and awarded PCC of J.K., M.K., and J.J. to FCCS.

{¶ 13} After the dispositional hearings, prior appointed counsel appeared, pro bono, on July 15, 2021 on mother's behalf and filed objections in all three cases concerning all four children. The objections asserted mother was denied notice of the hearing of the complaints in the refiled actions and that the juvenile court violated mother's right to counsel. Prior appointed counsel did not request appointment for the objection process, and the juvenile court did not sua sponte make such an appointment. In a memorandum in opposition to mother's objections, FCCS asserted it opposed mother's objection related to service but declined to take a position on mother's objection related to the deprivation of her right to counsel.

{¶ 14} On July 19, 2021, the juvenile court approved the magistrate's decisions in each of the cases in an interim order. Prior appointed counsel refiled the objections to the magistrate's decisions on July 31, 2021. The juvenile court then held a hearing on August 17, 2021 on mother's motion to stay the magistrate's decisions pending the court's ruling on the objections.

{¶ 15} At the August 17, 2021 hearing, prior appointed counsel told the juvenile court that he had been appointed to represent mother on all the prior complaints but that when he refused to accept service of the April 12, 2021 refiled complaints due to the change in dispositional request, the magistrate did not reappoint him as counsel for mother. Prior appointed counsel said mother learned about the granting of permanent custody from a caseworker a few days after the June 25, 2021 hearing, at which time mother called prior appointed counsel to tell him she had not received notice of the hearings. FCCS responded that mother was served by certified mail.

{¶ 16} On December 14, 2021, the juvenile court issued a decision and entry in each of the three cases overruling the objections to the magistrate's decision. More specifically, the juvenile court found that certified mail established a presumption of good service that

mother failed to rebut. Additionally, the juvenile court rejected mother's argument related to the deprivation of her right to counsel, noting there was no transcript of the proceedings before the magistrate and that mother failed to appear in person to request the appointment of counsel after the complaints were refiled the final time. Mother timely appeals from the decision and entry in each of the three cases.

## II. Assignment of Error

{¶ 17} Mother assigns the following sole assignment of error for our review:

> The Juvenile Court erred by failing to make a proper inquiry at the preliminary hearing on refiled A/N/D complaints into whether the Appellant-Mother had knowingly, intelligently, and voluntarily waived her rights to court-appointed counsel in the permanent and temporary custody proceedings on the refiled complaints, and the Juvenile Court further erred by failing to reappoint counsel to represent the Appellant-Mother on the refiled complaints seeking permanent custody. This error deprived Appellant-Mother of her right to counsel and constitutes reversible error.

## III. Discussion

{¶ 18} In her sole assignment of error, mother argues the trial court erred and deprived her of her right to counsel when it proceeded with the permanent and temporary custody proceedings in her absence and without appointing counsel for mother. More specifically, mother asserts the trial court should not have proceeded with the hearings before first determining whether mother had knowingly, intelligently, and voluntarily waived her right to counsel.

{¶ 19} "Parents have a constitutionally-protected fundamental interest in the care, custody, and management of their children." *In re H.D.*, 10th Dist. No. 13AP-707, 2014-Ohio-228, ¶ 10, citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000). When the state seeks to exercise its authority to terminate parental rights, "parents 'must be afforded every procedural and substantive protection the law allows.' " *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), superseded by statute, quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991). Pursuant to R.C. 2151.352, a parent in permanent custody proceedings "is entitled to representation by legal counsel at all stages of the proceedings" before the juvenile court.

The right to counsel arises "when a person becomes a party to a juvenile court proceeding," and includes "the right to be appointed counsel if indigent." Juv.R. 4(A).

**{¶ 20}** As the Supreme Court of Ohio held, "[w]hen the state seeks to terminate a parent's parental rights, the parent has a right to counsel. The parent cannot be deprived of that right unless the court finds that the parent has knowingly waived the right to counsel." *In re R.K.*, 152 Ohio St.3d 316, 2018-Ohio-23, syllabus. Further, "[w]aiver of counsel cannot be inferred from the unexplained failure of the parent to appear at a hearing." *Id.*

**{¶ 21}** In applying the Supreme Court's decision in *R.K.*, this court has explained that a court considering whether a parent has waived their right to counsel must engage in "real 'consideration' and 'discussion' " of the alleged waiver. *In re O.M.S-W.*, 10th Dist. No. 19AP-269, 2020-Ohio-201, ¶ 3, quoting *R.K.* at ¶ 7. "The aim of that careful examination must be to determine whether the right to counsel has been waived voluntarily, knowingly, and intelligently." (Internal quotations omitted). *Id.* Stated another way, the juvenile court must determine whether the parent has intentionally relinquished or abandoned a known right. *Id.*, citing *R.K.* at ¶ 5; *see also In re W.W.E.*, 10th Dist. No. 15AP-167, 2016-Ohio-4552, ¶ 36 ("when reviewing a waiver of the right to counsel in the context of a permanent termination of parental rights, courts in Ohio have examined whether the waiver was knowingly, intelligently, and voluntarily made") (citations omitted); *In re W.J.*, 3d Dist. No. 8-21-29, 2022-Ohio-2449, ¶ 34.

**{¶ 22}** Having reviewed the record, we find the trial court erred and deprived mother of her right to counsel. Initially, we note that the magistrate did not engage in a waiver analysis or make a finding that mother was knowingly, voluntarily, and intelligently waiving her right to counsel when the magistrate excused appointed counsel from the case at the April 13, 2021 hearing. Instead, the magistrate asked only whether counsel was having difficulty contacting mother and then deemed appointed counsel's refusal to accept service of the refiled complaint to be a withdrawal. In light of the Supreme Court's holding in *R.K.*, such a limited exchange is insufficient to find a parent has waived their right to counsel. *R.K.* at syllabus (a parent in permanent custody proceedings cannot be deprived of the right to counsel unless the trial court finds the parent has knowingly waived the right to counsel).

{¶ 23} Moreover, we conclude the trial court erred in failing to appoint counsel for mother after excusing mother's appointed counsel. The trial court determined it could not deprive mother of the right to counsel because, in the refiled action, mother had not yet appeared to exercise her right to ask for appointed counsel. This finding ignores the practical realities of the case history. When the case was initiated in April 2019, mother requested counsel at that time and the trial court appointed counsel for her. The same appointed counsel was reappointed to represent mother every time a complaint was refiled, totaling 16 refilings over more than two years across the three different cases for the four children. It was not until the most recent refiling in April 2021, during which FCCS made a change in the requested disposition, that the trial court did not reappoint counsel. Mother was not present at that hearing.

{¶ 24} The refiling of complaints in permanent custody proceedings to comply with the 90-day requirement of R.C. 2151.35(B)(1) is common practice. *See, e.g.*, *In re Lu.M-R*, 10th Dist. No. 21AP-681, 2022-Ohio-4779, ¶ 19 (when a complaint is dismissed, without prejudice, and refiled to comply with the 90-day requirement of R.C. 2151.35(B)(1), the juvenile court retains jurisdiction to take up the refiled complaint, and, in the case of "multiple dismiss-refile situations," the time limits on temporary custody run continuously from the date the child is first taken into emergency custody). After 16 refilings over more than two years with the same appointed counsel, mother could reasonably rely on having appointed counsel to represent her for the duration of the proceedings related to the children. The trial court cites no authority for its position that mother must affirmatively act to secure her right to counsel at each refiling where the purpose of the refiling is to comply with the 90-day requirement of R.C. 2151.35(B)(1). Instead, we construe R.C. 2151.352, Juv.R. 4 (A), and the Supreme Court's decision in *R.K.* as applying to mother in the refiled actions. Therefore, we find mother was entitled to representation by legal counsel, and the trial court deprived her of that right when it proceeded to hold hearings and render decisions related to the permanent custody of J.K., M.K., and J.J. and the temporary custody of Ja.S. in her absence and without counsel to represent her.

{¶ 25} Accordingly, we sustain mother's sole assignment of error. We reverse the judgment of the trial court and remand the case for the trial court to appoint counsel for mother before proceeding with the permanent and temporary custody proceedings.

**IV. Disposition**

{¶ 26} Based on the foregoing reasons, the trial court erred and deprived mother of her right to counsel in permanent custody proceedings when it permitted the "withdrawal" of her appointed counsel without determining whether mother was knowingly waiving her right to counsel and when it proceeded to hold hearings and render decisions in the refiled permanent and temporary custody proceedings in mother's absence and without counsel to represent mother. Having sustained mother's sole assignment of error, we reverse the decisions and entries of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, and we remand this matter to that court for further proceedings consistent with this decision.

*Judgments reversed; cause remanded.*

MENTEL and EDELSTEIN, JJ., concur.